UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AUSTIN B., : | |
|     Plaintiff, : | |
| : | |
|     v. : | C.A. No. 23-519-PAS |
| : | |
| MARTIN O'MALLEY, : | |
| Commissioner of Social Security, : | |
|     Defendant. : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On September 27 and October 1, 2021, respectively, Plaintiff Austin B. ("Plaintiff"), then 22, filed his fourth application/set of applications for social security benefits. Specifically, he applied for Childhood Insurance Benefits ("CIB") and Supplemental Security Income ("SSI") based on limitations caused by schizoaffective disorder, oppositional/defiant disorder ("ODD"), attention deficit hyperactivity disorder ("ADHD") and depression/anxiety. Plaintiff has earned a GED and competed a Job Corps program but has almost no past relevant work.

An administrative law judge ("ALJ") agreed that all of Plaintiff's claimed impairments are severe but found that the limits they impose results in an RFC[1] that does not preclude work. In reliance on the findings of two non-examining expert psychologists and other substantial evidence of record, the ALJ found that Plaintiff is socially limited in that he can tolerate only occasional contact with the public, co-workers and supervisors, although he can handle frequent contact during training, as well as that he can perform only simple, routine, repetitive tasks at a "nonproductive pace" in a work environment involving only simple work-related decisions, with

---

[1] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

only occasional changes in work setting. Tr. 22. Based on the testimony of a vocational expert, this RFC was found to permit work.

Pending before the Court on consent pursuant to 28 U.S.C. § 636(c) is Plaintiff's motion for reversal of the determination of the Commissioner of Social Security ("Commissioner") denying his claims.[2] ECF No. 10. Pointing to some of the findings reflected in a psychological evaluation report completed by a psychologist, Dr. Marlana Borgos, and disregarding others, as well as to the evidence of his poor hygiene and inconsistent medication compliance, Plaintiff argues that the ALJ's decision is tainted by the lack of a "logical bridge" between the social and adaptation/self-management findings on one hand and the evidence of record on the other; he also argues that the ALJ omitted off-task time supported by the record. Arguing that Plaintiff's motion is an improper request that the Court reweigh the evidence, the Commissioner has filed a counter motion for an order affirming the ALJ's decision. ECF No. 12. Plaintiff has submitted no opinion from any source supporting his contention that he is more limited than the ALJ found.

**I.   Standard of Review**

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g), 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Though the difference is quite subtle, this standard is "somewhat less strict"

---

[2] The Court notes that this record also reflects somatic impairments. Because these are not the subject of Plaintiff's argument, they are not discussed.

than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103). Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

## II.   Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.605. The impairment must be

3

severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 416.905-911.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 416.920(a)(1).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 416.920(a)(1)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 416.920(a)(1)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 416.920(a)(1)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 416.920(a)(1)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 416.920(a)(1)(4)(v).  The claimant bears the burden of proof at Steps One through Four, but it shifts to the Commissioner at Step Five.  Sacilowski v. Saul, 959 F.3d 431, 433-34 (1st Cir. 2020).

### B. Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 416.920c.  The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. § 416.920c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024).  Supportability "includes an

assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).

    C.    **Absenteeism**

When the symptoms of an impairment or combination of impairments would cause the claimant periodically to be unable to attend work, it is reversible error if the ALJ fails specifically to assess the issue of absenteeism. Jacquelyn V. v. Kijakazi, No. CV 21-314MSM, 2023 WL 371976, at *5 (D.R.I. Jan. 24, 2023), adopted by text order (D.R.I. Mar. 7, 2023). Remand is similarly required if the ALJ relies on the findings of non-examining physician experts who did not address absenteeism because, for example, they did not see records establishing the sheer scope of claimant's many medical concerns. Jessica S. v. Kijakazi, C.A. No. 21-75MSM, 2022 WL 522561, at *4-6 (D.R.I. Feb. 22, 2022) (non-examining experts "did not have access to a sufficiently developed record to permit them even to consider how the total number of medical appointments and hospitalizations would impact work attendance"), adopted, 2022 WL 834019 (D.R.I. Mar. 21, 2022). That is, it is error for an ALJ to ignore the impact on the ability to work of multiple impairments each of which could impact attendance, particularly where it is "undisputed that [the claimant's medical] issues required ongoing treatment throughout [an extended period]." Sacilowski, 959 F.3d at 435-36; see 20 C.F.R. § 416.923(b) (requirement for consideration of combined effect of multiple impairments). On the other hand, the finding of a non-examining expert that a claimant is limited in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms but can perform simple tasks "for two hour periods over an 8 hour day/40 hour week" necessarily

5

means that materially excessive off-task time and absenteeism were both considered and not found.  Heather D. v. Kijakazi, C.A. No. 23-00122-LDA, 2023 WL 7385107, at *7 (D.R.I. Nov. 8, 2023).  In that event, there is no error in the ALJ's reliance on the expert's findings to craft an RFC with no limits based on off-task time or absenteeism.  Id.

**III.    Background**

Throughout the period under review, Plaintiff lived with his mother, played on-line games during the night and slept during the day.  Claiming "bad social anxiety," Tr. 729, he resisted his mother's attempts to get him to socialize, insisting "ultimately that he in a way likes what he is dealing with, which gives a reason to not have to be social."  Tr. 869.

Prior to the relevant period, in 2015, a psychological evaluation was performed when Plaintiff was 16 by Dr. Louis Cerbo, a psychologist; it concluded that he had "significant emotional factors," noted Plaintiff's mother's report of social isolation and recommended "clinical treatment related to his depressed mood, as well as evaluating the social issues that are within the home that also may be reinforcing his depressed mood."  Tr. 337.  Dr. Cerbo diagnosed depression with anxious distress without psychotic features, ADHD and a learning disorder.  Tr. 337.  He opined that Plaintiff had the intellectual capacity to succeed in school and suggested a referral to the Office of Rehabilitative Services for a comprehensive vocational appraisal.  Tr. 342.  In 2018, Dr. Cerbo examined Plaintiff again (when he as 18), this time in connection with a prior disability application.  Tr. 345.  Dr. Cerbo's report again notes Plaintiff's mother's concern about social withdrawal and Plaintiff's self-report of limited socialization.  Tr. 346, 348-49.  He diagnosed bipolar/mood disorder, ADHD and a learning disorder.  While he noted that Plaintiff was "quiet, guarded, and emotionally constricted," he also observed that

Plaintiff completed testing without resistance and displayed normal thought processes with intact reality testing but had elevated scores for inattention and mild impulsivity.  Tr. 347.

During the relevant period, Plaintiff had therapy and medical management at Quality Behavioral Health and later at Thrive.  During these appointments, Plaintiff sometimes was observed to be "disheveled," e.g., Tr. 720, and sometimes with "appropriate dress," e.g., 738.  Sometimes these records reflect the report of Plaintiff's mother that he was non-compliant with medication, Tr. 794, but sometimes they reflect that "he is taking medication," Tr. 795.  These records reveal that both Plaintiff's mother and his treating providers tried to coax him to go out, to do something other than play video games in his room and to socialize, but that he lacked motivation, "report[ing] that he is happy with what is happening now in his life and does not want to change much to improve his situation."  Tr. 871.  Mental status examination observations are largely normal, including that Plaintiff was consistently cooperative, except that Plaintiff displayed sad/depressed or labile mood, sometimes had monotonous speech, was fidgety and sometimes displayed disheveled appearance.  E.g., Tr. 720, 771, 869.  Once,³ in April 21, 2021, Plaintiff was taken to a hospital emergency department because he had made a threat of suicide to his on-line fiancée and had a superficial laceration on his arm.  Tr. 396-97.  He was quickly discharged without admission after he denied suicidal intent and explained that his words and actions were meant as an empty threat; observations by mental health professionals during this brief interaction included that Plaintiff was "appropriately groomed and hygienic," and that he was cooperative with no psychosis or mania.  Tr. 502.

These records were reviewed by the non-examining expert psychologists who performed a detailed review of what are plainly complex treating materials and considered Plaintiff's

---

³ There is at least one other similar incident prior to the period in issue.

subjective statements, *inter alia*, that he sleeps and plays video games, does not go out alone due to anxiety, does not handle stress or change in routine and is afraid to go outside. Tr. 74-77. Finding that the record supports "severe and persistent [psych] impairments," but no inpatient hospitalizations, Tr. 79, they opined to the mental health limitations that became the foundation for the ALJ's Step Three and RFC findings. Thus, they found moderate limits in all "B" criteria spheres. Tr. 78, 100. For the RFC, regarding socialization, they found moderate limits in his ability to interact with the public, to accept instruction and criticism from supervisors and to get along with peers, provided that they also found that Plaintiff can accept supervision. Tr. 81, 102-03. Regarding the ability to attend and concentrate, they found Plaintiff markedly limited in the ability to carry out detailed instruction, but moderately limited in the ability to perform simple tasks including that he can sustain work over a normal 8-hour day/40-hour week work routine. Tr. 80, 102. Regarding adaption, they found Plaintiff moderately limited in his ability to respond to workplace changes, travel or set realistic goals independently of others. Tr. 81, 103.

After the non-examining file review, Plaintiff had another clinical psychological evaluation performed in June and July 2022 by Dr. Marlana Borgas, a psychologist. The purpose of the evaluation was to address "longstanding concerns with social-emotional development" and to assess whether Plaintiff suffered from autism. Tr. 975. On examination, Dr. Borgas observed that Plaintiff was disheveled and unkempt, and that he was shy at first but joked and was easy to work with once he seemed comfortable with her; Dr. Borgas found that the quality of Plaintiff's social behavior was "well within normal limits." Tr. 980. On assessment, Dr. Borgas found that Plaintiff had a severe elevation for social motivation, but that other social metrics were average (social communication) to moderately elevated (social cognition). Tr. 980-81. Dr. Borgas diagnosed depression, anxiety, social anxiety and panic disorder, but ruled out autism. Tr. 982.

She noted Plaintiff's resistance to making any changes regarding his sleep, nutrition, mood and social opportunities, and she suggested family therapy to negotiate rules about living together and therapy for Plaintiff to learn and improve social skills. Also, after the non-examining file review, Plaintiff's diabetes treating records were submitted. These consistently reflect normal mental status examination findings. E.g., Tr. 1006, 1134.

For his findings both at Step Three and for the RFC, the ALJ carefully analyzed and considered the Borgas report. Although he appropriately found that it is not a "medical opinion" because it lacked findings regarding Plaintiff's RFC limitations, 20 C.F.R. § 416.913(a)(2), and therefore he did not "articulate its persuasiveness," Tr. 25-26, based on this detailed analysis, the ALJ found that the Borgas report was supportive of the RFC findings of the non-examining psychologists.

## IV. Analysis

Plaintiff challenges the ALJ's Step Three findings as lacking any supportive analysis. This is inaccurate. The ALJ's extensive and detailed Step Three analysis covers more than two single spaced pages and is amply supported by substantial evidence and replete with citations to the record, including extensive citations to the findings in the Borgas report. Tr. 20-22. Plaintiff's attack on the ALJ's RFC similarly contends that the ALJ "did not build a proper logic bridge to any limitations in the RFC." ECF No. 10 at 5. Again, this is inaccurate. The ALJ's RFC findings also are based on a detailed analysis and are amply supported by substantial evidence, including the findings of the non-examining expert psychologists and the Borgas report. Tr. 22-26. Plaintiff's attempt to develop the latter argument falls flat in that it rests on cherry-picking[4] from the Borgas report and ignores Dr. Borgas' findings that Plaintiff became

---

[4] Plaintiff's argument relies in particular on the mother's responses to an assessment inquiry. However, as the Borgas report makes clear, these responses clashed materially with Plaintiff's responses to the same assessment

9

comfortable with her and was able to communicate appropriately; that Plaintiff's social behavior was "well within normal limits"; and that Plaintiff had the capacity to socialize based on which she recommended therapy for Plaintiff to learn and improve social skills. Flawed for the same reason is Plaintiff's contention that his adaptation limits were set without adequate regard for the extensive evidence of hygiene issues and inconsistency in taking medication; this argument ignores that the ALJ relied on the non-examining psychologists[5] and considered this evidence, which is mixed, in that sometimes Plaintiff was adequately groomed and sometimes not[6] and sometimes Plaintiff's mother reported medication noncompliance and sometimes the record reflects that he was taking his medication. That is, as the Commissioner contends, these arguments boil down to a request that the Court improperly reweigh the evidence, which it must decline to do. See Thomas P., 2022 WL 92651, at *8.

Before closing, the Court pauses to consider Plaintiff's argument that the RFC is tainted because the ALJ failed to consider that Plaintiff would be off-task due to psychotic symptoms and is unable to deal with other people for more than two and a half hours per day.[7] Plaintiff points to no medical evidence supporting this argument; no source, treating or otherwise, has opined to such a limit. Further, the non-examining experts specifically found that Plaintiff is

---

inquiry and with Dr. Borgas' clinical observations. Tr. 980-81. The Court notes that Plaintiff also relies, for example, on a "clinically significant" finding by Dr. Borgas of "aggressive behavior." ECF No. 10 at 5. The Court has scoured the Borgas report and such a finding does not appear in it.

[5] Thus, this is not a case where the ALJ improperly rested on his untutored lay analysis of evidence to interpret it contrary to the interpretation by a qualified expert as in Carlos N. v. Kijakazi, C.A. No. 20-398-MSM-PAS (D.R.I. Nov. 21, 2021), adopted by text order, (D.R.I. Jan. 21, 2022).

[6] As the non-examining psychologists noted, Plaintiff's function report indicates no issues with personal care.

[7] The Court is baffled by Plaintiff's contention that he is limited to dealing with other people for only for two and a half hours per day. Plaintiff cites nothing to support this argument and the Court's review of this extensive record did not result in the discovery of any support for the argument. As such, it is waived. See Michelle C. v. O'Malley, C.A. No. 23-230MSM, 2024 WL 2237917, at *7 (D.R.I. May 17, 2024), adopted, 2024 WL 2834062 (D.R.I. June 4, 2024).

capable of performing simple tasks over the course of a normal 8-hour day/40-hour week work routine; such a finding necessarily means that materially excessive off-task time and absenteeism were considered and not found.  See Heather D., 2023 WL 7385107, at *7.  Thus, there is no error in the ALJ's reliance on such findings to craft an RFC with no limits based on off-task time or absenteeism.  See id.

In sum, the Court finds that the ALJ properly applied the law and appropriately relied on substantial evidence to support his findings.  The Court further finds that this is a case where "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion."  Samantha D. v. O'Malley, C.A. No. 22-464MSM, 2023 WL 8889659, at *6 (D.R.I. Dec. 26, 2023), adopted, 2024 WL 1214555 (D.R.I. Mar. 21, 2024).  Therefore, the ALJ's decision must be affirmed.

**V.    Conclusion**

Based on the foregoing, Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner (ECF No. 10) is DENIED and the Commissioner's Motion to Affirm (ECF No. 12) is GRANTED.  Judgment shall enter in favor of the Commissioner.


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 8, 2024